UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MARK KRESSER, | ) | |
| | ) | Case No. 3:16-cv-255 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge C. Clifford Shirley |
| ADVANCED TACTICAL ARMAMENT CONCEPTS, LLC; ADVANCED MUNITIONS INTERNATIONAL, LLC; ADVANCED MUNITIONS INTERNATIONAL HOLDINGS, LLC; AMI INVESTMENT HOLDINGS, LLC; PYTHON METEOR HOLDINGS, INC.; JAMES ANTICH; and JEFFREY ANTICH, | ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION**

Before the Court is Defendants' motion to dismiss or transfer. (Doc. 7.) Plaintiff responded in opposition (Doc. 11), and Defendants replied (Doc. 13). For the following reasons, the Court **GRANTS** the motion.

I.  BACKGROUND

According to the Complaint, Defendants Advanced Tactical Armament Concepts, LLC, Advanced Munitions International, LLC, Advanced Munitions International Holdings, LLC, AMI Investment Holdings, LLC, and Python Meteor Holdings, Inc., are a collection of corporate entities owned and controlled by Defendants James and Jeffery Antich. (Doc. 1, at 1–2.) Plaintiff is an executive in the firearms-manufacturing industry. (*Id*. at 3.)

Defendant Advanced Tactical Armament Concepts, LLC, ("ATAC") approached Plaintiff (who, at the time, lived in Tennessee) about becoming its president. (*Id.*) At the time, ATAC was in the process of moving its operations outside of Arizona. (*Id.*) While the proposed expansion had originally been slated for Texas, the Antichs ultimately planned to move to Alcoa, Blount County, Tennessee. (*Id.*)

On July 20, 2015, Plaintiff accepted ATAC's proposed employment agreement (the "Agreement") and moved to the company's Payson, Arizona facility. (*Id.* at 4.) Plaintiff ultimately moved back to Tennessee to facilitate the move. (*Id.*) During this time, the Antichs used several of the defendant corporate entities to negotiate with the State of Tennessee for economic incentives to facilitate the move. (*Id.*)

During the first several weeks of employment, Plaintiff began to discover Defendants had made several misrepresentations during the employment negotiations related to whether Defendants were in compliance with applicable laws and regulations and whether the company had a "Directors and Officers" insurance policy that covered Plaintiff. (*Id.* at 5.) He also learned that Defendants did not have the resources or commitments necessary to relocate to Tennessee. (*Id.* at 6.) Defendants also breached several provisions of the employment agreement. (*Id.* at 5–6.) Plaintiff repeatedly wrote letters demanding that the Antichs cure these breaches. (*Id.* at 6–7.) Defendants did work to cure some of the breaches, but after the third such letter, had yet to come into full compliance with the employment agreement. (*Id.* at 7.) Under the terms of the employment agreement, Defendants had until February 26, 2016, to cure the alleged breaches before Plaintiff could terminate the agreement for cause; however, on February 26, 2016, Defendants terminated Plaintiff. (*Id.*) That same day, Plaintiff was served with the summons and complaint in *Scottsdale Firearms, LLC et al. v. Advanced Tactical Armament Concepts,*

*LLC, et al.*, No. 2:16-cv-00425, ("the Scottsdale suit"), filed in the United States District Court for the District of Arizona based on Defendants' proposed manufacture and sale of HPR®, EMCON®, or BLACK OPS® ammunition in Tennessee. (*Id*. at 8.)

On February 27, 2016, Plaintiff tendered his notice that he was terminating the agreement for cause based on Defendants' material breaches. (*Id*. at 7.) He filed the instant complaint on May 19, 2016, alleging promissory fraud, fraud in the inducement, fraudulent concealment, fraud, breach of contract, civil conspiracy, and violations of Tenn. Code Ann. § 50-1-102. (Doc. 1). Defendants have now filed a motion to transfer based on a forum-selection clause in the employment agreement and to dismiss certain claims based on a failure to state a claim.

## II.   STANDARD OF REVIEW

The law is unsettled regarding whether Rule 12(b)(6) is an appropriate mechanism for enforcing a contractual forum-selection clause. The Supreme Court has declared that a forum-selection clause should not be enforced via a Rule 12(b)(3) motion, but expressly declined to reach the issue of whether Rule 12(b)(6) would or would not be appropriate. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579–80 (2013). Instead, it held that 28 U.S.C. § 1404(a) provided a freestanding basis to enforce such a clause by "codifying the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system . . . ." *Id*. at 580. Here, the Court will consider the motion to transfer under 28 U.S.C. § 1404(a) and its alternative motion to dismiss under Rule 12(b)(6).

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Though the statement need not contain detailed factual allegations, it must

contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

The Agreement between ATAC and Plaintiff contains a forum-selection clause that provides as follows:

> This Agreement shall be governed and interpreted by the laws of the State of Nevada (without giving effect to any conflict of law provisions thereof), unless and until the Company relocates to Blount County, Tennessee. After that relocation, this Agreement shall be governed and interpreted by the laws of the State of Tennessee (without giving effect to any conflict of law provisions thereof). If the Company is still located in Nevada, the Parties to this Agreement agree to submit to the exclusive jurisdiction and venue of the federal and state courts located in Washoe County, Nevada, with respect to disputes arising under or related to this Agreement. If the Company relocates to Tennessee, thereafter the Parties to this Agreement agree to submit to the exclusive jurisdiction and venue of the federal and state courts located in Blount County, Tennessee, with respect to disputes arising under or related to this Agreement.

In a lawsuit where federal jurisdiction is based on diversity of the parties, "the enforceability of the forum selection clause is governed by federal law." *Wong v. Partygaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). The Supreme Court has held that 28 U.S.C. § 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atlantic Marine*, 134 S. Ct. at 579. On a motion under Rule 12(b)(6) and under 28 U.S.C. § 1404(a), the district court has discretion to either dismiss or transfer. *Smith v. Aegon Companies Pension Plan*, 769 F.3d 922, 934 (6th Cir. 2014), *cert. denied,* 136 S. Ct. 791 (2016).

Tort claims, like those alleged here, can be encompassed by a contractual forum-selection clause if the tort claims ultimately depend on the existence of the contractual relationship between the parties, or if the tort claims involve the same operative facts as a parallel claim for breach of contract. *See Wireless Properties, LLC v. Crown Castle Int'l Corp.*, 2011 WL 3420734, at *5 (E.D. Tenn. Aug. 4, 2011); *Hasler Aviation, LLC. v. Aircenter, Inc.*, 2007 WL 2463283, at *5 (E.D. Tenn. Aug. 27, 2007). All of Plaintiff's claims, including his tort claims,

5

against ATAC arise out of the contractual relationship governed by the employment agreement; thus, these claims fall within the scope of the clause.

"Only under extraordinary circumstances unrelated to the convenience of the parties" should a court decline to enforce a forum-selection clause. *Atlantic Marine*, 134 S. Ct. at 581. Ordinarily, on a motion under § 1404(a), "the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id*. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id*. (internal quotation marks omitted). In such a circumstance, a "valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id*. (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

*Id*. at 583.

To evaluate the enforceability of a forum-selection clause, the Court must look to the following factors: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong*, 589 F.3d at 828 (citing *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999)). The plaintiff "bear[s] the burden of showing why

the court should not transfer the case to the forum to which the parties agreed." *Atlantic Marine*, 134 S. Ct. at 581–82.

Plaintiff argues that the Court should decline to enforce the agreement because it was the product of fraud. He argues that ATAC misrepresented that it had the ability to transfer its headquarters to Tennessee and, thus, he was fraudulently induced to sign the agreement with the conditional forum-selection clause. To support his allegations, he points out that the contract also provides that Plaintiff's services "shall be performed temporarily in Payson, Arizona . . . [and] shall thereafter be performed at such location to which the company has relocated." (Doc. 11, at 2 (quoting Doc. 1-1, at 3).) Plaintiff argues that, because ATAC neither intended to nor was able to relocate, this clause is unenforceable.

As Defendants point out, however, the agreement makes very clear that the relocation to Tennessee was not a fait accompli. First, the clause itself provides that: "If the Company is still located in Nevada, the Parties to this Agreement agree to submit to the exclusive jurisdiction and venue of the federal and state courts located in Washoe County, Nevada." (Doc. 1-1, at 13.) With regards to Plaintiff's work location, the Agreement provides:

> (c) Location(s). The services to be performed by Employee hereunder shall be performed temporarily in Payson, Arizona, subject to such travel as Company may reasonably require. Upon any relocation of Company, Employee's services shall thereafter be performed at such location to which Company has relocated, subject to the terms of Paragraph 3(d).

(*Id*. at 3.) Paragraph 3(d) provides: "However, if [ATAC] decides to headquarter in a location other than near Knoxville, TN, then [ATAC] shall financially assist [Plaintiff] in relocating from TN to such location." *Id*. at 4. The Agreement itself makes clear that ATAC had not committed to relocating to Tennessee.

By signing the Agreement, Plaintiff consented to litigating disputes in Nevada for at least some period of time.  He does not allege that he expected the move to occur contemporaneously with his hiring, nor has he alleged that he was given a particular time frame for the relocation.  Thus, regardless of whether ATAC did or did not have the ability to relocate to Tennessee, Plaintiff consented to litigating in Nevada if disputes arose before relocation and it is undisputed that relocation had not yet occurred at the time of this dispute.  Plaintiff has failed to allege sufficient facts to show that the forum-selection clause was itself the product of fraud.

Plaintiff fails to argue that Nevada is an ineffective or unfair forum for the suit, and he does not argue that it would be so seriously inconvenient that it would be unfair to force him to bring his suit there.  His secondary argument focuses entirely on public interest factors—factors that the Supreme Court has cautioned should "rarely defeat a transfer motion." *Atlantic Marine*, 134 S. Ct. at 582.  Plaintiff argues that this is a local controversy that should be handled here because "Defendants' fraud against [Plaintiff] occurred within the bigger picture of swindling millions of dollars from Blount County and the state of Tennessee." (Doc. 11, at 3.)  Assuming that is true, however, it is not the basis of this suit; this suit is a dispute over the employment relationship between Plaintiff and Defendants.  The only resident of East Tennessee that will be affected by Plaintiff's success or failure in this litigation is Plaintiff, himself.  This is not the rare case where public interest factors override a valid, enforceable forum-selection clause.

Accordingly, the Court will enforce the forum-selection clause and transfer Plaintiff's claims against ATAC to the District of Nevada.  That does not, however, end the Court's inquiry, because only ATAC was a party to the forum-selection clause.  The Court must now consider whether to transfer Plaintiff's claims against the remaining Defendants.

In deciding whether to grant a transfer of claims where some claims are not governed by a forum selection clause, the Court applies the Section 1404(a) analysis to those claims and considers the private interests of the parties, the public interest in litigating the case in the chosen forum, and the interests of judicial economy implicated by a potential severance.[1]  Here, the private interest factors are inconclusive.  Some weight is given to the plaintiff's choice of forum, but many of the witnesses and most of the documentary evidence seem likely to be in Nevada or Arizona.[2]  The public interest factors do not weigh strongly either way given that this is an employment dispute that is unlikely to have broader effect on the public at large.

The interests of judicial economy strongly favor a transfer.  Section 1404(a) was designed to prevent a scenario in "which two cases involving precisely the same issues are simultaneously pending in different District Courts" because such a scenario "leads to the wastefulness of time, energy and money."  *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).  This is precisely the situation that would arise here if the Court were to transfer some claims while retaining others.  Accordingly, the Court finds that the interests of judicial economy favor the transfer of the entirety of this action to the District of Nevada.  *See Family Wireless #1, LLC v. Auto. Techs., Inc.*, No. 15-11215, 2015 WL 5142350, at *7 (E.D. Mich. Sept. 1, 2015) (transferring an entire action for purposes of judicial economy where some plaintiffs were subject to forum-selection clauses and others were not).

---

[1] The law is somewhat unsettled on the precise contours of the analysis that should obtain here. *See generally In re Rolls Royce Corp.*, 775 F.3d 671, 679–83 (5th Cir. 2014), *cert. denied sub nom. PHI Inc. v. Rolls Royce Corp.*, 136 S. Ct. 45 (2015).  But, the parties have not argued that any particular test is appropriate here; rather, they choose to join issue on the public, private and judicial interests that most courts have deemed proper considerations.

[2] While Payson, Arizona, is not in Nevada, the Court takes judicial notice of the fact that it is much closer to Nevada than Tennessee.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motion to transfer this action to the District of Nevada. (Doc. 7.) Because the Court is granting Defendants' motion to transfer, it will not reach their motion to dismiss for failure to state a claim. An accompanying order will enter.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**